IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF MARYLAND

| IN THE MATTER OF THE SEARCH OF THE SUBJECT ELECTRONIC DEVICES DESCRIBED IN ATTACHMENT A | Case No. 19-3146 JMC  UNDER SEAL |
|---|---|

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Special Agent John Zorbas of the Federal Bureau of Investigation ("FBI"), being duly sworn, declare and state as follows:

### INTRODUCTION

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

2. I submit this affidavit in support of an application for search warrants authorizing a search of the following property (collectively, the "**TARGET DEVICES**"), also described in Attachment A:

    a. One Apple iPhone 6s cellular telephone; model A1687; bearing IC: 579C-E2944A; FCC-ID: BCG-E2944A ("**TARGET DEVICE 1**"); and

    b. One Apple I-Phone S; model A1688; bearing IC: 579C-E2946A; FCC-ID: BCG-E2946A ("**TARGET DEVICE 2**").

3. The **TARGET DEVICES** are currently in the custody of the FBI in the District of Maryland. I submit that there is probable cause to believe that there is evidence located in the **TARGET DEVICES** concerning the following offenses: conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846; felon in possession of a firearm, in violation of 18

1

U.S.C. § 922(g); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. § 1962(d); and conspiracy to commit a violent crime in aid of racketeering, in violation of 18 U.S.C. § 1959 (the "Target Offenses").

4. The search warrant would authorize the forensic examination of the **TARGET DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B by members of the FBI or their authorized representatives, including but not limited to, other law enforcement agents assisting in the investigation.

5. Because I submit this affidavit for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals.

## EXPERTISE

6. I am a Special Agent with the Federal Bureau of Investigation and have been so employed for approximately three years. I am currently assigned to the Baltimore Safe Streets squad, where I am responsible for the investigation of violent gangs. As an FBI Special Agent, I have participated in a number of gang investigations. In addition, I have received both formal and informal training from the FBI regarding gang investigations. Prior to joining the FBI, I served as an Illinois law enforcement officer for approximately twelve years. I have made

numerous arrests for violations of federal and state law and have testified on numerous occasions, which has contributed to convictions in two states.

7.  I received specialized training in homicide investigations, drug recognition and interdiction, crime scene investigations, evidence collection, gang investigations, interviews and interrogation, forensic statement analysis, search warrant applications, cellular phone/electronic media searches. I received specialized training in the application and service of high-risk search warrants and in the use of social media in criminal investigations.

8.  With respect to drug trafficking and homicide investigations in particular, I have worked directly with confidential sources and informants to conduct controlled purchases of controlled dangerous substances. During these investigations, I performed duties associated with electronic surveillance including, but not limited to, serving as the case agent, monitoring consensual telephone calls, conducting surveillance, interpreting intercepted conversations, and transcribing those same conversations. I listened to thousands of intercepted communications between individuals involved in or suspected to be involved in the distribution of controlled dangerous substances. As a result of these investigations, I have extensive experience in debriefing defendants, informants, participants, and various persons directly involved in buying and distributing controlled dangerous substances and have become familiar with the language and terminology used by those persons, the prices of controlled dangerous substances, the packaging used to distribute these substances, and the organizational structure of enterprises that traffic in controlled dangerous substances. I am familiar with the use of wire and electronic communication devices by drug traffickers, the patterns of activity of drug traffickers, and the methods and language and terms that are used by drug traffickers to disguise drug trafficking and

the source and nature of the profits they earn from their illegal activities. Based on this familiarization, I know the following:

a. Drug trafficking is an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, drug trafficking is an illicit commercial activity that is characterized by regular, repeated criminal activity;

b. Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons.

c. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and digital camera capabilities.

d. Individuals involved in gang networks often use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity and sometimes take photographs of themselves and/or co-conspirators.

e. Individuals who possess or own hand guns or other weapons frequently photograph themselves holding the handguns or other weapons.

f. Photographs on a suspect's digital devices sometimes show the suspect(s) handling proceeds or other property related to the criminal gang's networks.

g. Individuals who engage in criminal street gang activities often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

    h. Drug traffickers, use cellular telephones to coordinate with suppliers, customers, and co-conspirators and frequently switch phones or utilize multiple cellular telephones to evade law enforcement; and

    i. Drug traffickers often place control and ownership of assets (including real property) in names other that their own to avoid detection of those assets and locations by government agencies. Even though assets are in the names of other people, drug traffickers retain ownership, control, and use of the assets, exercising dominion and control over them.

9. I am familiar with the history and structure of the Bloods gang and subsets of the Bloods gang based on my training, experience, including but not limited to the review of law enforcement generated reports of witness interviews with former and present gang members, information obtained from gang experts within federal and state law enforcement, other gang prosecutions in state and federal court, and review of open source media and/or information.

10. The Bloods gang originated in Los Angeles, California in the 1960s. Bloods members engaged in violent crime to gain control of their local neighborhoods in Los Angeles. In order for the Bloods gang to expand their enterprise, Bloods leaders gave their blessing to other high-ranking members in different cities around the United States to form new Bloods subsets. For example, the "Piru" subset of the Bloods originated on Piru Street in Compton, California. A subset of Piru is the "Fruit Town Brims" ("FTBs"). The FTBs established their presence on the East Coast within the Maryland Division of Corrections by recruiting new members that were incarcerated. In or around 2005, a high-ranking member of the FTBs gave his blessing for the establishment, on the East Coast, of the South Side Brims ("SSB") a/k/a "5-9 Brims."

11. SSB operates in San Diego, Washington, D.C., Maryland, Pennsylvania, Virginia, South Carolina, Georgia, and other states across the country. SSB gang members actively recruit new members, including juveniles. Law enforcement estimates that there are hundreds of members who associate with the SSB. SSB members engage in criminal activity including murder, drug trafficking, weapons trafficking, assault, home invasions, carjackings, and robbery. SSB members participate in violent crime to expand territory, increase financial stability, and to rise through the ranks of leadership.

12. All information contained in this Affidavit is either personally known to me, has been related to me by other law enforcement officers, and/or has been obtained from records, documents, and other sources gathered during this investigation. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

## PROBABLE CAUSE

13. The FBI and other state and federal agencies are investigating the criminal activities of the SSB in Maryland. Individuals associated with the SSB are believed to have been involved in arson, narcotics, firearms trafficking and other firearms-related offenses, violent crime, and homicides in Maryland and elsewhere. The investigation includes the SSB's efforts to recruit new members in Maryland and expand its influence in Maryland. During its investigation, FBI and other members of law enforcement have arrested and interviewed SSB members and have reviewed Facebook and telephone activity of SSB associates in Maryland. As further described below, FBI has gathered information establishing gang activity via its members.

### A) TARGET DEVICE 1

14. In the course of this investigation, the FBI identified Rodney MADDEN as a member of SSB. For example, on March 8, 2018, Facebook account "Turk Brim," which is the account belonging to SSB member James MCCOY, posted a photo of MCCOY, MADDEN, and another member of the gang posing together and making hand signs known to be used by Bloods gang members. MADDEN is seen in the photos below wearing black, brandishing what appears to be a firearm, and promoting SSB:



_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

OCT 16 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

15. On March 28, 2018 a Baltimore County undercover Officer (UC3816) contacted MADDEN via text (410-565-2014) to purchase $100 of crack/cocaine from MADDEN. Law

7

enforcement had obtained MADDEN's phone number via a confidential human source. Upon arrival, MADDEN entered the UC vehicle and provided the UC with CDS. The UC and MADDEN also discussed the potential of conducting future narcotic transactions. The transaction was recorded by Baltimore County Police. The CDS was submitted to the Baltimore County lab and positive results for crack/cocaine were returned.

16. On March 31, 2018 the Maryland State Police completed a traffic stop on a vehicle in which MADDEN was riding in the back seat. Recovered from Madden's possession was a loaded firearm. Officers also recovered from the vehicle a clear plastic bag containing suspected marijuana, a red ski mask, black gloves, and a red bandana. Madden was subsequently arrested and charged with Possession of Marijuana Less than 10 grams and Possession of a Firearm by a Felon. On July 23, 2018, an FTA-VOP-Distribution of CDS was issued for MADDEN (Warrant number: 03K18003189). On July 26, 2018, MADDEN was arrested and served with the aforementioned warrant at 736 Peach Orchard lane, Towson Maryland by Baltimore County Police Department.

17. On October 18, 2018, a Criminal Complaint was issued for MADDEN charging him with Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841, arising out of the March 28, 2018 controlled purchase of narcotics, among other controlled purchases. *See* SAG-18-02844, ECF 1-1.

18. On October 19, 2018, MADDEN was transported from Baltimore County Detention Center (BCDC) to the custody of the United States Marshalls at the United States Court House by the Special Agents of the Federal Bureau of Investigation (FBI). BCDC turned over an envelope containing the belongings of MADDEN to the transporting Agents. The envelope contained **TARGET DEVICE 1**. AGENTS submitted **TARGET DEVICE 1** into the

FBI evidence control unit. MADDEN was subsequently indicted on November 20, 2018 by a federal grand jury sitting in the District of Maryland for Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. § 841. *See* DKC-18-576, ECF 15.

### B) TARGET DEVICE 2

19. On or about August 12, 2016, Nelson PRYOR, a member of SSB, was arrested in connection with an attempted murder in Baltimore, Maryland. The incident was captured by a BPD City Watch surveillance camera. The video captures PRYOR attempting to shoot a person in the head ("Victim 1") with a gun. Despite the close proximity of Victim 1, PRYOR missed Victim 1 and then immediately fled the scene. Officers caught PRYOR a short distance away and arrested him. At the time, officers recovered **TARGET DEVICE 2** from PRYOR's person. **TARGET DEVICE 2** was submitted to the BPD Evidence Control unit. The phone was later obtained by the FBI and is currently in the custody of the FBI in the District of Maryland.

20. On April 6, 2017, PRYOR pleaded guilty to Assault First Degree and Use of a Firearm by a Felon for the aforementioned incident. I have subsequently reviewed the BPD City Watch camera and observed the attempted murder of Victim 1. From watching the video, I observed a person I believed to be John HAIRSTON, a leader in SSB, present at the attempted murder.

21. In the course of this investigation, investigators have spoken to a confidential source of information ("CS-1") regarding SSB. CS-1 was a member of SSB and was familiar with the gang's activities. CS-1 has agreed to cooperate with the government for consideration with CS-1's pending criminal case. CS-1 has agreed to plead guilty to RICO conspiracy. CS-1's information has been corroborated to the extent possible and law enforcement considers CS-1 reliable.

22. CS-1 reported that PRYOR carried out the attempted murder under orders from SSB leadership, including HAIRSTON. CS-1 stated that CS-1 knew this because CS-1 attended a gang meeting where the gang discussed the plan to kill Victim 1 and that HAIRSTON chose PRYOR to do the killing.

23. PRYOR and HAIRSTON are "Friends" on Facebook. Facebook url: https://www.facebook.com/59.SS.brim with user name Nelson Pryor. Posted in the intro section of PRYOR's public profile is the following: "59 SouthSide Brim BASEMENT.OcKEANVIEW.PRIMETIME. (B.O.P.GANG)" and a photo depicting a hand gesture that I know through my training and experience to be a Bloods gangs sign.



24. The **Target Devices** are currently in the custody of the FBI in the District of Maryland and are in the same or substantially similar condition as when it was first seized by law enforcement.

## SEARCH OF THE SUBJECT ELECTRONIC DEVICES

25. Based on my knowledge, training, and experience, I know that electronic devices such as cellular phones can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on the **Subject Electronic Device** may still be stored on those devices, for various reasons, as discussed in the following paragraphs.

26. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

27. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy"

11

while executing a search warrant at a residence. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

28. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

29. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

32. During this case and in numerous others involving complex DTOs, investigators have learned that the drug-trafficking organization relies heavily on electronic devices to facilitate drug trafficking. It is necessary to conduct a physical inspection of the electronic devices in order to obtain electronic communications and other information that might be stored on the seized phones and to determine whether any of the seized phones were the subject of wiretap, pen register or other investigation detailed herein. The phones may also contain data and communications that were not electronically intercepted due to encryption or for other reasons.

33. Again, the **Target Devices** remains in the custody of law enforcement. The only known specifics of each phone requested for authorization to search are described in Attachment A and the types of information expected to be recovered from the devices are described in Attachment B.

34. Accordingly, there is probable cause to believe that evidence will be found from an analysis of the **Target Devices**. The phones may contain records of DTO/gang members' most recent calls, which may include calls with other persons involved in the DTO/gang, whether they are suppliers, distributors, or other associates. The phones may contain copies of SMS or text or other electronic communications between all Target Subjects and other persons involved in drug-activity; the phones may contain address or "contact list" information for other drug associates; and the phones may contain a variety of other electronic evidence, including electronic communications through various cellular or internet-based applications (which the DTO/gang has been known to use in the past), photographs and other information.

35. Lastly, it is known through training, knowledge and experience that the forensic analysis of an electronic device could allow investigators to identify any email account(s) or social media account(s), which may be utilized by the DTO to facilitate drug trafficking. Many

smartphones have the ability to be synced with not only email and social media accounts, but also sync data to "cloud" mediums. The analysis of the **Target Devices** would allow investigators to identify the accounts utilized for further search warrants to reveal additional evidence related to the Target Offenses.

## CONCLUSION

36. Based upon the information set forth in this affidavit, I believe that sufficient probable cause exists to believe that in the **Target Devices**, there is evidence of the Target Offenses.

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue search warrants for the **Target Devices**, and authorize the search and the seizure of the items described in **Attachment A**, for the information set forth in **Attachment B** where applicable, which constitute fruits, evidence and instrumentalities of the Target Offenses.

_____
John Zorbas
Special Agent
Federal Bureau of Investigation

Sworn to before me this ___ day of September 2019.

_____
The Hon. J. Mark Coulson
United States Magistrate Judge

FILED ___ ENTERED
LOGGED ___ RECEIVED

OCT 16 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY